```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/02/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
In re:

KOLLEL MATEH EFRAIM, LLC,                    10-CV-9031 (DAB)
a/k/a MATEH EPHRAIM LLC, a/k/a               ORDER and OPINION
KOLEL MATEH EFRAIM
                                             Chapter 7
                                             Bankruptcy Court
                                             Case No. 04-16410
                        Debtor,
-----------------------------------------X
HELEN-MAY HOLDINGS, LLC, and
IRENE GRIFFIN,


                   Appellants,       Bankruptcy Court
                                     Adv. Pro. No. 04-04545
        -against-

ROBERT L. GELTZER, as Chapter 7 Trustee
Of the Estate of the Debtor KOLLEL MATEH
EFRAIM, LLC, a/k/a MATEH EPHRAIM LLC,
a/k/a KOLEL MATEH EFRAIM,

                   Appellee,
-----------------------------------------X
HELEN-MAY HOLDINGS, LLC, and
IRENE GRIFFIN,


                   Appellants,       Bankruptcy Court
                                     Adv. Pro. No. 08-01265
        -against-

JACK LEFKOWITZ and ABRAHAM STEINWURZEL,

                   Appellees.
-----------------------------------------X

DEBORAH A. BATTS, United States District Judge.

    Pursuant to 20 U.S.C. § 158(a) and Rules 8013, 8001(a) and

8002(a) of the Federal Rules of Bankruptcy Procedure, Appellant

1

Helen-May appeals the orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") dated August 18, 2009, September 21, 2010, and October 12, 2010.  Prior to the October 12, 2010 Order, Helen-May and the bankruptcy trustee entered into a settlement.  As was their right, fiduciary defendants – also the appellees here - Jack Lefkowitz and Abraham Steinwurzel (the "Appellees"), objected to the settlement.  In its October 12, 2010 Order, the Bankruptcy Court considered the objections, and ultimately set Helen-May's administrative claim under 11 U.S.C. § 503(b)(1)(A) at zero because Helen-May failed to meet its burden of proof and demonstrate entitlement to an administrative claim.  For the reasons below, the Bankruptcy Court's Orders dated August 18, 2009, September 21, 2010, and October 12, 2010 are AFFIRMED in their entirety.

## I. BACKGROUND[1]

Appellant Helen-May entered into a contract (the "Contract") to sell real property in Sullivan County, New York (the "Property") to Aron Fixler on April 29, 2004 for $1,400,000. (AE A.)  The Property consists of a resort hotel on

---

[1]    The factual summary here is derived primarily from the following documents: Appellant's exhibits ("AE"); the Bankruptcy Court Orders dated August 10, 2007, August 19, 2009, September 21, 2010, and October 12, 2010; and the trial transcript In re Kollel Mateh Efraim, Case No. 04-16410, March 10, 2010 ("Tr. March 10, 2010").

60 to 77 acres. In re Kollel Mateh Efraim, Case No. 04-16410, 2010 Bankr. Lexis 3197, at * 3 (Bankr. S.D.N.Y. Sept. 21, 2010). Fixler then assigned the Contract to Kollel Mateh Efraim ("the Debtor"). (AE B.)

Helen-May and Debtor subsequently entered into an "Occupancy Agreement" dated June 3, 2004. In the Occupancy Agreement, Helen-May granted Debtor the right to occupy and operate the Property until the (extended) closing date of September 27, 2004. In re Kollel Mateh Efraim, Case No. 04-16410, 2009 Bankr. Lexis 2236, at * 3-4 (Bankr. S.D.N.Y. Aug. 18, 2009). The Occupancy Agreement stipulated that if the Debtor failed to close on September 27, 2004, Helen-May would be entitled to $1,500 a day for each day the Debtor continued to occupy the Property (the "Daily Penalty"). Id.

Helen-May and the Debtor failed to close, but the parties extended the closing date to November 29, 2004. Id. at * 4. The extension required the Debtor to make payments aggregating $40,500, but did not nullify the Daily Penalty stipulated in the Occupancy Agreement. (AE D.) On October 4, 2004, the Debtor filed for Chapter 11 bankruptcy. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236, at * 4. Following numerous hearings and settlements not pertinent to this appeal, Bankruptcy Judge

Bernstein, relying on expert testimony from Gene Barbanti[2], a real estate broker and consultant, awarded Helen-May a judgment of $245,779 as adequate protection. In re Kollel Mateh Efraim, Case No. 04-16410, BC 07.0163, Order and Judgment (Bankr. S.D.N.Y. Aug. 10, 2007). The Bankruptcy Court determined adequate protection based on Barbanti's testimony that "an investor would expect at least a 10% return on his money." The Bankruptcy Court concluded that the reasonable annual rental value of the Property is $140,000. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236, at * 8.

On October 25, 2007, the Bankruptcy Court converted Debtor's Chapter 11 case into a Chapter 7 case and appointed Robert L. Geltzer as Trustee (the "Trustee"). In re Kollel Mateh Efraim, 2010 Bankr. Lexis 3197, at * 7. Helen-May and the Trustee then entered into a settlement, which was later modified by a second settlement. Id. at * 7-9. The second settlement recognized Helen-May's $132,812.38 lien against the estate for the earlier sales of other real property owned by the estate. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236, at * 17-18. The Trustee agreed in the second settlement to pay down $30,000 of

---

[2]   Gene Barbanti provided the Bankruptcy Court with testimony regarding the reasonable rental value of the Property. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236, at * 7.

the lien, and the remaining $102,812.38 would be superior to all other chapters 11 and 7 administrative claims. Id.

Additionally, the second settlement awarded Helen-May an administrative claim totaling the difference between the total post-petition Daily Penalty and the lien amount. Id.  Backenroth Frankel & Krinsky, LLC ("BFK") and the Appellees here objected to the settlement and the payment of the Daily Penalty. In re Kollel Mateh Efraim, 2010 Bankr. Lexis 3197, at * 9.  Upon review of the record, the Bankruptcy Court reopened the record to determine Helen-May's administrative claim.  The Bankruptcy Court's rationale for reopening the record was two-fold: (1) during the hearing on adequate protection in July 2005, the Bankruptcy Court never ruled on whether the Daily Penalty under the Occupancy Agreement fixes the reasonable value of the use of the Property by the Debtor; and (2) the Bankruptcy Court exercised its discretion to revisit its prior Orders because the Court learned of the existence of the Occupancy Agreement after the determination on adequate protection. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236, at * 26-28.

On March 10, 2010, the Bankruptcy Court conducted an evidentiary hearing. Id.  Helen-May called Paul Griffin, Helen-May's former hotel resort manager, to testify on the reasonable rental value of the Property. (Tr. March 10, 2010, at 6.)

Griffin, a former Navy reservist and musician, worked in the hospitality industry since the late 1980s and sat on Sullivan County's Chamber of Commerce and Tourism Board. Id. at 6-9. Initially, Helen-May moved for the Bankruptcy Court to qualify Griffin as an expert testimony or a lay witness. Id. at 11.  The Bankruptcy Court rejected permitting Griffin as an expert witness, but allowed Helen-May the opportunity to lay a foundation necessary to qualify Griffin as a lay witness regarding the fair rental value of the Property. Id. at 13-14.

Griffin testified that he estimated the net revenue of the resort hotel for 2004 through 2007 was approximately $1.4 million. Id. at 33-37.  Griffin concluded that the fair market rental value of the property "would be roughly $100,000 a month based on the $1.4 projection per year." Id. at 44.  Upon cross-examination, however, the Appellees demonstrated Griffin lacked knowledge of the fair market rental value of comparable properties:

> Mr. Blander:  Do you have any personal knowledge, sir, as
> to the fair market rental value of any comparable
> properties in Sullivan County?
> Mr. Griffin:  As I said, that's not a -- something -- a
> function that I, as a hotelier, have ever discussed or
> considered prior to all of this.
> Mr. Blander: So the answer is no?
> Mr. Griffin: Right.
>
> Id. at 45-46.

Moreover, Griffin had no knowledge of the actual annual revenue of the Property between 2000 and the part of 2004 when he served as manager:

> Mr. Blander:  Now is it fair to say, sir, that sitting here today you have no recollection of the actual positive cash flow of The Meadows in '00, '01, '02, '03, and the part of '04 that you owned it?
> Mr. Griffin:  Correct.

> Id. at 47.

Following Griffin's testimony, the Bankruptcy Court expressed its skepticism of whether Helen-May had met its burden, but the Bankruptcy Court allowed Helen-May an opportunity to supplement the record.  In response, Helen-May read portions of Rabbi Steinwurzel's testimony stating that he paid approximately $45,000 for use of another property, which is not at issue here. (Tr. March 10, 2010 at 99-100.)[3] Subsequently, Appellees moved for partial findings since Helen-May failed to make a prima facie case for an administrative claim. In re Kollel Mateh Efraim, 2010 Bankr. Lexis 3197, at * 15.

---

[3]    Once Helen-May's attorney finished reading the testimony of Rabbi Steinwurzel, it sought permission from the Bankruptcy Court to keep the record open and offer another expert to the Bankruptcy Court on a future date in the event that the Court was not convinced by Helen-May's evidence and arguments. (Tr. March 10, 2010 at 99-105.)  The Bankruptcy Court, however, closed the record after noting that it had already "re-open[ed] the proof" and Helen-May was not going to get a "do over" on an issue that had been raised two months prior to the October 2010 hearing. (Id.)

After briefing and consideration of the evidence, the
Bankruptcy Court ruled that Appellant Helen-May's administrative
claim be set at zero. In re Kollel Mateh Efraim, 2010 Bankr.
Lexis 3197, at * 22.  The Bankruptcy Court determined that while
Griffin's testimony proves that the Debtor was in possession of
the Property, it failed to establish the portion of the Property
the Debtor used and the value of any use that did occur. Id. at
* 21.  Additionally, Helen-May failed to proffer evidence
establishing a connection between the income generated by the
operation of the summer camp and the use of the Property by the
debtor. Id.  To sum up, the Bankruptcy Court concluded "Helen-
May failed to carry its [sic] burden of proving the elements of
its administrative claim." Id. at * 22-23.


## II. DISCUSSION

A. Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8013,
8001(a) and 8002(a), this Court has jurisdiction of this appeal
because the Bankruptcy Court's Orders are final and the appeal
is timely.

This Court reviews the Bankruptcy Court's legal conclusions
de novo. Pearl-Phil GMT LTD. v. Caldor Corp., 266 B.R. 575, 580

(S.D.N.Y. 2001) (citing <u>Nat'l Union Fire Ins. Co. v. Bonnazio</u>

(<u>In re Bonnanzio</u>), 91 F.3d 296, 300 (2d Cir. 1996)).  The

Bankruptcy Court's finding of facts are reviewed under a clearly

erroneous standard, <u>In re Momentum Mfg. Corp.</u>, 25 F.3d 1132,

1136 (2d Cir. 1994), and "the burden of demonstrating that the

Bankruptcy Court's findings of fact are clearly erroneous rests

squarely on the shoulder of the appellant." <u>In re Ciena Capital</u>,

440 B.R. 47, 52 (S.D.N.Y. 2010).  "A lower court's choice

between two permissible views of the facts cannot be held to be

clearly erroneous." <u>In re Commodore Bus. Mach.</u>, 246 B.R. 476,

487 (S.D.N.Y. 2000).  A clearly erroneous decision "must strike

the court as more than just maybe or probably wrong; it must

strike the court as wrong with the force of a five-week-old

unrefrigerated dead fish." <u>Id.</u> (citing <u>Parts and Elec. Motors,</u>

<u>Inc. v. Sterling Elec., Inc.</u>, 866 F.2d 228, 233 (7th Cir. 1988),

<u>cert. denied</u>, 493 U.S. 847, 107 L. Ed. 2d 100, 110 S. Ct. 141

(1989) (internal quotations omitted)).  This Court gives

deference to the Bankruptcy Court's "factual determinations

because of its expertise and superior position to make

determinations of credibility." <u>Pearl-Phil GMT LTD. v. Caldor</u>

<u>Corp.</u>, 266 B.R. at 580 (citing <u>In re Commodore Bus. Mach.</u>, 246

B.R. at 487 (internal quotations omitted)).

"Mixed questions of law and fact are reviewed de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." Best Payphones, Inc., v. Manhattan Telecomm. Corp., 432 B.R. 46, 53 (S.D.N.Y. 2010) (citing Italian Colors Rest. v. Am. Express Travel Related Servs. Co (In re Am. Express Merchants' Litig.), 554 F.3d 300, 316 (2d Cir. 2009), vacated sub nom. Am. Express Co. v. Italian Colors Rest., 130 S.Ct. 2401 (2010) (internal quotations omitted)).


B. Relevant Law

The Bankruptcy Court held that Helen-May's administrative claim is limited to the actual benefit derived by the Debtor, and that Helen-May offered no competent evidence demonstrating that the Debtor derived any benefit. In re Kollel Mateh Efraim, 2010 Bankr. LEXIS 3197, at * 22-23.  This Court agrees.

11 U.S.C. §503(b)(1)(A) allows for administrative expenses for "actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case."

Administrative expenses are afforded the highest priority during bankruptcy liquidation and reorganization.  11 U.S.C. §

10

507(a)(1).  The purpose of the priority status for
administrative expenses is "to ensure that the services needed
to preserve the estate will be performed [and provided by third-
parties] by minimizing the risk that the debtor will ultimately
not be able to provide payment therefor." In re Cook and Sons
Mining, Inc., Case No. 05-19, 2005 U.S. Dist. LEXIS 21615, at *
20 (Bankr. E.D. KY. 2005) (citing In re Roth American, Inc., 975
F.2d 949, 958 (3rd Cir. 1992)).  "Since the affording of
priority status to one creditor has an impact upon other
creditors of the debtor's estate and conflicts with the goal of
bankruptcy to provide creditors with an equal distribution of a
debtor's resources, this court has consistently held that
administrative claims must be narrowly construed." In re Lease-
A-Fleet, Inc., 140 B.R. 840, 844 (Bankr. E.D. Pa. 1992); In re
Enron Corp., 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002) (citing
Amalgamated Ins. Fund v. McFarlin's Inc., 789 F.2d 98, 101 (2d
Cir. 1986)).

Strictly construing "actual, necessary costs and expenses
of preserving the estate" minimizes administrative claims and
preserves the resources of the estate for the benefit of all
creditors. In re Enron Corp., 279 B.R. at 704.

The claimant must carry the burden of proving entitlement
to an administrative claim by showing that the expense: (1)

11

arises out of a transaction between creditor and bankruptcy estate; and (2) that the expense "was a 'necessary' expense of the bankruptcy estate by showing the debt directly and substantially benefitted the estate." In re Cook and Sons Mining, Inc., 2005 U.S. Dist. LEXIS 21615, at * 23 (citing In re Economy Lodging Sys., Inc.), 234 B.R. 691, 696 (B.A.P. 6th Cir. 1999)); In re Enron Corp., 279 B.R. at 705.

Under the "benefit to the estate test" specified above, "a court looks to the actual benefit to the estate [,] not the loss sustained by a creditor." In re Enron Corp., 279 B.R. at 705 (citing In re CIS Corp., 142 B.R. 640, 642 (S.D.N.Y. 1992)). Mere possession of claimant's property without any actual use by the debtor is not enough to warrant an administrative claim. See In re Enron Corp., 279 B.R. at 706 ("The 'option' to use the property that is inherent in mere possession is considered not sufficient to establish benefit to the estate if the debtor does not actually use the property."); In re Patient Education Media, Inc., 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998). Possession without use may only be grounds for an administrative claim when the estate benefits from the possession. Oscar Heineman Corp. v. Nat Levy & Co., Inc., 6 F.2d 970, 975 (2d Cir. 1925)("a court of equity will not allow a receiver who has had the benefit of the lease to enjoy those benefits without paying therefor. . .").

12

C. The Bankruptcy Court Did Not Err in Considering the
Administrative Claim

In the July 20, 2005 hearing, the Bankruptcy Court

determined adequate protection based on testimony demonstrating

the reasonable rental value as a function of an initial

investment. In re Kollel Mateh Efraim, 2009 Bankr. Lexis 2236,

at * 8.  Helen-May contends that this evidence also established

its administrative claim, and the Bankruptcy Court erred in

holding a future evidentiary hearing on the existence of Helen-

May's administrative claim.


1. Establishing Adequate Protection Does Not Establish an
Administrative Claim

Bankruptcy proceedings trigger an automatic stay on any act

"against a property of the estate that was or could have been

commenced before the filing of the petition." New England

Dairies, Inc. v. Dairy Mart Convenience Stores, Inc., 351 F.3d

86, 90 (2d Cir. 2003).  An entity or creditor with an interest

in a property part of the estate in bankruptcy is granted

adequate protection when that interest is endangered. 11 U.S.C §

362.  A creditor's interest in a property is endangered when

there is a decline in the value of the property, but also when

the creditor is paying to maintain the collateral. In re Balco

13

Ltd., 312 B.R. 743, 751 (Bankr. S.D.N.Y. 2004).  The purpose of
adequate protection is to protect "the creditor from diminution
in the value of its collateral during the reorganization
process." In re Mosello, 195 B.R. 277, 292 (Bankr. S.D.N.Y.
1996) (citing In re Beker Indus., 58 B.R. 725, 736 (Bankr.
S.D.N.Y. 1986)).

Here, the Bankruptcy Court granted Helen-May adequate
protection because the Debtor had actual possession of the
Property.  During the hearing to determine adequate protection,
Helen-May offered proof in the form of its own assessment of the
fair-market rental value of the Property based on expected
returns on an investment of $1.4 million.  The Bankruptcy Court
determined the amount of adequate protection using the fair-
market rental value of the Property, plus a reasonable return on
the Property, plus taxes. (Trial Transcript In re Kollel Mateh
Efraim, Case No. 04-16410, July 20, 2005 ("Tr. July 20, 2005")
at 10, 13.)  In fixing adequate protection, the Bankruptcy Court
explicitly assumed that Debtor possessed 100% of the Property.
Id. at 13.

Just because the Bankruptcy Court determined adequate
protection based on possession of the Property by Debtor, an
administrative claim has not been established, as possession is
insufficient to establish entitlement to an administrative

14

claim. In re Mid-Region Petroleum, 1 F.3d 1130, 1133 (10th Cir.
1993) (finding that a debtor's mere possession of railcars
without use is not a benefit entitling creditor to an
administrative expense); see In re Enron Corp., 279 B.R. at 706.
In fact, the Bankruptcy Court found that Helen-May did not offer
any evidence proving that the Debtor used 100% of the Property.

Instead, the Appellant, at most, offered evidence that the
Debtor allowed a non-party to use a portion of the Property as a
summer camp and then offer the amount that non-party paid to use
a wholly different property.  The Bankruptcy Court, properly,
did not afford weight to this evidence for purposes of
establishing an administrative claim.  There is no clear error
regarding the Bankruptcy Court's finding on the weight of this
evidence. See United States v. Yellow Cab Co., 338 U.S. 338, 342
(1949) (holding no clear error "where the evidence would support
a conclusion either way but where the trial court has decided to
weigh more heavily for the defendants."). As the Bankruptcy
Court held, inferring the actual benefit the Debtor received
simply by receiving evidence as to what others paid for
similarly situated land is improper.

## 2. Doctrine of Law of the Case

Helen-May argues that the doctrine of law of the case should apply and the Bankruptcy Court's findings on adequate protection should also establish an administrative claim.  The doctrine of law of the case holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988). The doctrine is discretionary and does not limit a court's ability to reconsider an issue. Liona Corp., Inc. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991).

In opening an evidentiary hearing on Helen-May's administrative claim, the Bankruptcy Court sought to simply clarify the record and, therefore, did not abuse its discretion. See In re PCH Assocs., 949 F.2d at 592.  As the Bankruptcy Court noted, "the record [the July 20, 2005 Hearing on adequate protection] is muddled" and the former bankruptcy judge, Judge Blackshear, gave no explanation when denying Helen-May's petition in 2004 seeking $1,500 a day payment[4] pursuant to the

---

[4]    Helen-May argues that the Occupancy Agreement should govern, where the $1,500 daily rate represents the lease value of the Property.  In In re Lease-A-Fleet, the court rejected a claimant's argument "that the 'reasonable' value of the Debtor's use of its property . . . is measured strictly by the terms of the parties' lease."  140 B.R. at 847.

Occupancy Agreement.[5] <u>In re Kollel Mateh Efraim</u>, 2009 Bankr.
Lexis 2236, at * 27.  Additionally, the July 20, 2005 hearing
failed to show the actual benefit to the Debtor, and did not
address the central inquiry for an administrative claim.


D. Burden of Proof

     Next, Helen-May argues that the Bankruptcy Court erred in
requiring it to establish the burden of proof as to the
entitlement to an administrative claim.  While the Second
Circuit has not reached this precise issue, the case law in the
majority of jurisdictions, including sister courts of this
district, clearly holds that the claimant must prove entitlement
to an administrative claim. <u>In re Economy Lodging Sys., Inc.</u>,
234 B.R. at 696; <u>Collet Ventures, Inc. v. Inexco Oil Co.</u>, 1990
U.S. Dist. Lexis 7444, at * 6 (W.D. Missouri 1990); <u>In re Enron</u>
<u>Corp.</u>, 279 B.R. at 705 ("The claimant has the burden of
establishing entitlement to the priority"); <u>In re Drexel Burnham</u>
<u>Lambert Grp. Inc.</u>, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991).

---

[5]    The record is, as the Bankruptcy Court put it, "muddled"
because Helen-May advanced a theory seeking payment for "use and
occupancy" and the use of this phrase is not necessarily related
to an administrative claim.  Hence, it was appropriate for the
Bankruptcy Court to determine Helen-May's administrative claim
for the <u>first</u> time.  Moreover, the Bankruptcy Court learned of
the Occupancy Agreement <u>after</u> determining adequate protection
and never considered the merits of the $1,500 Occupancy
Agreement as a means to determine an administrative claim. <u>In re</u>
<u>Kollel Mateh Efraim</u>, 2009 Bankr. Lexis 2236, at * 8.

Additionally, Helen-May contends that because the Debtor denied it access to the Property, Helen-May should not be required to shoulder the requisite burden of proof.  This argument is meritless.  In In re Equipment Leasers of Penn., Inc., the Court denied a similar argument advanced by a claimant.  Nos. Civ. A. 96-544, 1996 WL 325105, at * 5 (E.D.Pa. 1996)("nothing precluded Appellant [claimant] from calling additional witnesses to testify to Debtor's use of the Building.")  As in In re Equipment Leasers of Penn., Inc., Helen-May could have called additional witnesses to testify as to the Debtor's activities on the Property, but instead, Helen-May only relied on the testimony of two witnesses that had no actual knowledge of the activities on the Property. See In re Equipment Leasers of Pennsylvania, Nos. Civ. A. 96- 544, 1996 WL 325105, at * 5.


E. Weight of Evidence

Early in the March 10, 2010 hearing, the Bankruptcy Court gave notice to Helen-May that it had not laid a proper foundation to qualify Paul Griffin as an expert witness or a lay witness. (Tr. March 10, 2010 at 13.)  Griffin had no actual knowledge of the Property's revenue stream while he "managed" the Property and knew nothing about similarly-placed properties.

(Tr. March 10, 2010, at 45-47.)   The Bankruptcy Court did not

abuse its discretion in finding that Griffin's testimony was

insufficient for Griffin to quality as an expert witness and

that his lay witness testimony was irrelevant. See Gulf Ins. Co.

v. Glasbrenner, 343 B.R. 47, 57 (S.D.N.Y. 2006); In re Dunn,

Case No. 95-C-50305, 1996 U.S. Dist. LEXIS 5744, at * 11 (N.D.

Ill. 1996) (holding that a function of the "bankruptcy court as

the trier of fact [is] to determine the credibility of witnesses

and the weight to be given to their testimony.").

    Following the close of evidence and Griffin's testimony,

the Bankruptcy Court informed Helen-May that it has failed to

offer proof entitling it to an administrative claim but

nonetheless, reopened the record to allow Helen-May another

opportunity to submit evidence to establish an administrative

claim.   In its second attempt, Helen-May merely read into the

record the deposition testimony of Rabbi Steinwurzel.

    Helen-May sought to use Rabbi Steinwurzel's prior testimony

as proof of the amount the Debtor benefited by using the

Property as a camp in the summers of 2004 through 2007.

However, Rabbi Steinwurzel's deposition testimony only

demonstrated that he paid approximately $45,000 to use some

other property, not the Property at issue in this case.   Helen-

May tendered no further evidence supporting the conclusion that

19

that the Debtor actually benefited from the use of the Property as a camp.  The Bankruptcy Court found, and this Court agrees, that this additional evidence failed to rectify the defects in Helen-May's ability to establish a prima facie case.[6] (Tr. March 10, 2010 at 105.)

Finally, even if a plausible claim for an administrative claim could be drawn from Helen-May's evidence, "so long as the factual findings of the bankruptcy court are plausible in light of the record viewed in its entirety, this Court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." In re WorldCom, Inc., Case No. 09-CV-9623, 2011 U.S. Dist. LEXIS 42279, at * 16-17 (S.D.N.Y. 2011) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (internal quotations omitted)).  The evidence was insufficient.

### III. CONCLUSION

For the reasons above, the Bankruptcy Court's Orders dated August 18, 2009, September 21, 2010, and October 12, 2010 are

---

[6]   Helen-May admitted to trying the case "on a more economic basis."  As the Bankruptcy Court noted, efforts to save money do not justify a court allowing new theories, tactics or a re-opening of the record on a piece-meal basis: "You [Helen-May] don't get a do over. . . . (Tr. March 10, 2010 at 105.)

AFFIRMED in their entirety.  Helen-May's appeal in this action

is hereby DISMISSED.  The Clerk of Court is DIRECTED to close

the docket in this case.

         SO ORDERED.

DATED:     New York, New York
           August 2, 2011

                                    _Deborah A. Batts_
                                    DEBORAH A. BATTS
                                 United States District Judge

21